UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYNI MELLISSA PRUETT,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 13-cv-04868-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18 and 23 |

On October 21, 2013, Plaintiff Jayni Pruett filed this action seeking judicial review of Administrative Law Judge ("ALJ") Maxine R. Benmour's decision that she is not disabled under section 1614(a)(3)(A) of the Social Security Act. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 18, 23. Plaintiff argues that the ALJ committed reversible errors that warrant remand directly for the payment of benefits. Defendant Commissioner Carolyn W. Colvin contends that the ALJ made no reversible errors and that substantial evidence supported the ALJ's decision.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

## I. BACKGROUND

Pruett filed an application for supplemental security income on December 10, 2010, alleging disability beginning August 10, 2009. Administrative Record ("AR") 17. Her claim was first denied on April 25, 2011, and then again upon reconsideration on August 19, 2011. *Id*. On September 29, 2011, Pruett filed a written request for hearing. *Id*. On June 22, 2012, the ALJ held a video hearing where both Pruett and an impartial vocational expert testified. *Id*. On July 13, 2012, the ALJ issued a written decision finding Pruett not disabled as defined by the Social

Security Act and denied her application for supplemental security income. *Id*. The decision followed the required five-step process for determining eligibility for supplemental security income benefits, which proceeds sequentially as each required finding is made.

At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as work activity that is both substantial and gainful. A person is involved in "substantial work activity" if she engages in work that involves significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is defined as "work usually done for pay or profit," regardless of whether the claimant actually receives a profit. 20 C.F.R. § 416.972(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, the ALJ proceeds to Step Two of the evaluation. In this case, the ALJ determined that Pruett had not engaged in substantial gainful activity since her December 10, 2010 application date and proceeded to Step Two. AR 19.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, she is not disabled. If the claimant does have a severe impairment or combination of impairments, the ALJ proceeds to Step Three. Here, the ALJ found that Pruett suffered from several severe impairments: diabetes, diabetic neuropathy, depression, morbid obesity, back pain, and asthma and therefore continued to Step Three.

At Step Three, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 416.909. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step. At Step Three, the ALJ found that Pruett does not have an impairment listed in 20

1  C.F.R. Part 404, Subpart P, App. 1, or a combination of impairments equal to those listed, and
2  proceeded to the next step.

3  Before reaching Step Four in the sequential evaluation, the ALJ must determine the
4  claimant's residual functional capacity ("RF Capacity"). 20 C.F.R. § 416.920(e). A claimant's
5  RF Capacity consists of her ability to engage in physical and mental work activity on an ongoing
6  basis, in spite of any physical or mental limitations caused by her impairments. The ALJ
7  considers both severe and non-severe impairments in determining the claimant's RF Capacity. 20
8  C.F.R. §§ 416.920(e), 416.945.

9  Here, the ALJ considered Pruett's testimony, medical records, and the opinions of two
10 doctors: Dr. William Carlson (Pruett's treating physician for over two years) and Dr. Fariba Vesali
11 (a physician who performed a consultative evaluation in April of 2011). AR 20-23. The ALJ
12 afforded "some weight" to the opinions of Dr. Vesali, which the ALJ believed understated Pruett's
13 limitations, AR 22, gave "little weight" to the opinions of Dr. Carlson, which the ALJ found to be
14 inconsistent with the medical record, AR 23, and found Pruett's testimony about the severity of
15 her symptoms "not credible," AR 22. After considering the medical evidence in the record and the
16 relative weights of the medical opinions, the ALJ concluded that Pruett had the following RF
17 Capacity:

> [T]he claimant [can] perform sedentary work as defined in 20 CFR 416.967(a) except that she could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, sit for six hours in an eight-hour workday, and stand and/or walk for two hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to flumes, odors, dusts, gases, and poor ventilation and all exposure to hazards. She is limited to one-to-two step instruction jobs.

23 AR 20-21.

24 At Step Four, the ALJ must determine whether the claimant has the RF Capacity to
25 perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant has such capacity, she is not
26 disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ
27 proceeds to the final step in the sequential evaluation. In this case, the ALJ determined that Pruett
28 could not return to a previous occupation because she had no past relevant work. AR 23.

1    At Step Five, the ALJ considers the claimant's RF Capacity, age, education, and work
experience in determining whether the claimant can perform any other work besides past relevant
work. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can perform other work, she is not
disabled. If the claimant cannot perform other work and fulfills the durational requirement, she is
disabled. Here, the ALJ relied on the testimony of a vocational expert, who stated that an
individual with Pruett's RF Capacity, age, education, and work experience could work as a "hand
packer" or a "small products assembler," which the vocational expert testified were categorized as
sedentary positions. AR 58-60. The ALJ concluded her analysis by finding that Pruett was not
disabled because she is capable of both identified occupations, which – based on further testimony
from the vocational expert – she found to exist in sufficient numbers in the national economy to
warrant the denial of benefits. AR 24.

Pruett submitted a request for review of the ALJ's decision to the SSA Appeals Council.
In support of that request, Pruett also submitted approximately 1,500 pages of treatment records
dated after the ALJ's decision. The Appeals Council concluded that the new information
contained in those records concerned a time after the ALJ's denial of benefits and, therefore, did
not affect the decision about whether Pruett was disabled on or before the date the ALJ's decision
was rendered. AR 1. The Appeals Council then denied Pruett's request for review, finding no
basis for changing the ALJ's decision, thereby making the ALJ's written opinion the final decision
subject to judicial review. *Id*.

After the Appeals Council denied her request for review of the ALJ's decision, Pruett filed
this action on October 21, 2013. The parties cross-moved for summary judgment. Dkt. No. 18,
23. This order resolves both motions.

**II.  STANDARD OF REVIEW**

The Commissioner's denial of benefits should be disturbed only if it is not supported by
substantial evidence or is based on legal error. *Stout v. Comm'r Social Sec. Admin.*, 454 F.3d
1050, 1054 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial
evidence" means "more than a mere scintilla, but less than a preponderance." *Bayliss v. Barnhart*,
427 F.3d 1211, 1214 n. 1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might

4

accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006); *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)). Even where the evidence is not susceptible to any rational interpretation supporting the ALJ's decision, the Court may not reverse if the ALJ's error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## III. DISCUSSION

Pruett argues that the ALJ improperly denied her petition for benefits on the grounds that the ALJ: (1) failed to resolve conflicts between the testimony of the vocational expert and the Department of Labor's Dictionary of Occupational Titles (the "DOT"); and (2) improperly discounted and ignored the opinions of her treating physician.[1] This Court agrees that the ALJ erred in both respects.

### A. The Vocational Expert's Testimony

At Step Five, the ALJ has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite her identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. § 416.920(g). In making this determination, the ALJ relies on the DOT, which is the SSA's "primary source of reliable job information" regarding jobs that exist in the national economy. *See Zavlin v. Colvin*,

---

[1] Pruett also argues that the Appeals Council improperly refused to consider 1,500 pages of treatment records submitted after the ALJ's decision and that the ALJ improperly discounted Pruett's testimony concerning the severity of her symptoms. However, because this Court concludes that the ALJ's improper discounting of Dr. Carlson's opinion requires remand for the payment of benefits, the Court does not reach these issues. *See, e.g., Lorden v. Apfel*, 162 F.3d 1169 (9th Cir. 1998) ("It is completely settled in this circuit that the ALJ *must* defer to the treating doctor's opinion, even if contradicted by another doctor, unless the ALJ makes findings setting forth specific and legitimate reasons for rejecting it that are based on substantial evidence in the record.") (emphasis in original) (citation omitted).

No. 13-35276 at 8 (9th Cir. Feb. 20, 2015) (citing *Terry v. Sullivan*, 903 F.2d 1273, 12769 (9th Cir. 1990).

      The ALJ may also rely on evidence provided by a vocational expert, who may testify about specific occupations that a claimant can perform in light of her RF Capacity. *See* 20 C.F.R. § 416.966(e). However, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavlin*, No. 13-35276 at 9 (citation omitted). Where a conflict exists, the ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony over the information contained in the DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007); *see also* Social Security Ruling 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled."). The ALJ's failure to do so may preclude the Court from determining whether the ALJ's decision is supported by substantial evidence. *See Massachi*, 486 F.3d at 1154 (stating that "we cannot determine whether the ALJ properly relied on [the vocational expert's testimony]" due to the ALJ's failure to address conflicts with the DOT).

      In this case, the ALJ found that Pruett is capable of sedentary work with several limitations. AR 20-21; *see also* AR 24 (noting that if Pruett could perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.24). To determine the extent to which these limitations restricted Pruett's employment opportunities, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Pruett's age, education, work experience, and RF Capacity. AR 57-61. The ALJ adopted the vocational expert's testimony that Pruett could perform the requirements of both a small products assembler and a hand packager, which the vocational expert stated required only sedentary level exertion. AR 24. However, the vocational expert's testimony that the small

products assembler and hand packager positions qualify as sedentary work conflicts with the DOT, which categorizes those positions as light and medium work, respectively. *Compare* AR 57-61 *with* DOT 706.684-022 and 920.587-018. The ALJ failed to question the vocational expert concerning whether her testimony conflicted with the DOT and thus necessarily failed to consider whether the vocational expert's explanation for deviating from the DOT was reasonable. *See* AR 57-61. In short, the ALJ did not adhere to the clear requirements of Social Security Ruling 00-4P. *See Massachi*, 486 F.3d at 1154.

The Commissioner does not contest that the ALJ failed to follow Social Security Ruling 00-4P, and expressly concedes that Pruett is not capable of working as a hand packer. *See* Dkt. No. 23 at 8. However, the Commissioner asserts that this Court must still uphold the ALJ's denial of benefits because Pruett has not "identified a necessary conflict between the ALJ's residual functional capacity finding and the ability to perform the small products assembler job." *Id*. According to the Commissioner, because Pruett may be able to perform some activities in the DOT's definition of light work (such as pushing or pulling levers of negligible weight, *see* Dkt. No. 23 at 8), it is at least possible that the particular type of light work required of a small products assembler could be performed by Pruett despite the ALJ's finding that she is limited to only some types of sedentary work. In essence, the Commissioner argues that, regardless of the ALJ's error, Pruett cannot prevail unless she demonstrates that she is, in fact, incapable of performing the work of a small products assembler.

The Commissioner is mistaken. At Step Five, the *Commissioner* has the burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations." *Zavlin*, No. 13-35276 at 7-8 (quoting *Johnson*, 60 F.3d at 1432). This Court may uphold the ALJ's determination only if her finding that Pruett can work in the national economy is supported by substantial evidence. *See Stout*, 454 F.3d at 1054. Here, because the ALJ did not question the vocational expert concerning the apparent conflict between the vocational expert's testimony and the DOT, there is no evidence in the record that plaintiff can perform the light work required of a small products assembler. Moreover, even assuming that the only light work required of a small products assembler is pushing and pulling

7

levers of negligible weight (and there is no evidence in the record that this is true), the Court cannot affirm the ALJ's denial on grounds not invoked in the underlying proceeding. *See id*. (holding that if the Commissioner "invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline") (citation omitted). Here, the ALJ found that Pruett was capable of performing only some types of sedentary work and failed to address the discrepancy between that finding and the exertion requirements for the small products assembler position listed in the DOT. AR 24. Pruett's hypothetical ability to push or pull levers of negligible weight was simply not part of the ALJ's analysis and therefore cannot constitute grounds to affirm the denial of benefits.

Under these circumstances, the Court cannot determine that substantial evidence supports the ALJ's step-five finding that Pruett could perform other work in light of her physical and mental limitations.

### B. The Testimony of Pruett's Treating Physician

An ALJ must defer to a treating doctor's opinion, even if controverted by another doctor, unless the ALJ makes findings setting forth specific, legitimate reasons for rejecting that opinion that are based on substantial evidence in the record. *See Chaudhry*, 688 F.3d at 671; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ must do more than offer her conclusions—she must set forth her own interpretations and explain why they, rather than the doctor's, are correct. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

#### 1. The ALJ Improperly Discounted the Opinions of Pruett's Treating Physician

Pruett's treating physician, Dr. Carlson, found that Pruett was subject to significantly greater work-related limitations than the ALJ included in Pruett's RF Capacity determination. For example, Dr. Carlson opined that Pruett could sit for less than two hours in an eight-hour workday

1   and stand and walk for less than two hours.  AR 593.  In contrast, the ALJ determined that Pruett
2   could sit for six hours in an eight-hour workday and walk for a full two hours.  AR 20-21.  The
3   ALJ also did not accept Dr. Carlson's conclusion that Pruett's impairments would require her to
4   miss four or more days of work each month, AR 23, as well as several other restrictions, such as
5   needing to lie down for one hour after every ten minutes of work and being incapable of even "low
6   stress jobs," AR 568-569.  In order to reject Dr. Carlson's opinions, the ALJ was required to make
7   findings setting forth specific, legitimate reasons for rejecting the each opinion and support those
8   findings with citations to substantial evidence in the record.  *See Chaudhry*, 688 F.3d at 671.

Here, the ALJ identified three reasons for assigning "little weight" to Dr. Carlson's opinions: (1) Dr. Carlson's estimate of Pruett's pain level is inconsistent with his treating notes; (2) the record shows only a slight decrease in sensation over Pruett's foot and lower legs; and (3) Pruett has not undergone any diagnostic testing of record.  AR 23.  After reviewing the ALJ's decision and the record as a whole, the Court finds that these are not "specific, legitimate" reasons, nor are they based on "substantial evidence in the record."

First, the Court finds Dr. Carlson's estimate of Pruett's average pain level to be consistent with his treatment notes.  On March 17, 2012, Dr. Carlson signed an RF Capacity Questionnaire where he stated that Pruett's "average level of pain" was a "6-8/10" on "a scale of 1-10."  AR 567.  The ALJ concluded that this answer created a discrepancy with Dr. Carlson's treatment notes.  AR 23.  The ALJ's conclusion is unfounded.  Dr. Carlson noted Pruett's reported pain level in at least sixteen office visits over the two years prior to the date he filled out the RF Capacity Questionnaire.  On eleven of those sixteen visits, Dr. Carlson recorded Pruett as stating that her pain level was either three or four on a five-point scale (corresponding to six or eight on a ten-point scale).  In only four of those fifteen visits did Dr. Carlson record Pruett as reporting a pain level below that average (one or two on a five-point scale), and in only one visit did she report her pain as above that average (five on the five-point scale).

| Date of Visit | Pain Level Reported[2] | Record Citation |
|---|---|---|

---

[2] All pain levels represented in the chart have been converted from a five-point scale to a ten-point

| April 13, 2010 | 4/10 | AR 263 |
| --- | --- | --- |
| May 7, 2010 | 4/10 | AR 264 |
| May 28, 2010 | 6/10 | AR 265 |
| June 22, 2010 | 8/10 | AR 266 |
| August 17, 2010 | 6/10 | AR 267 |
| September 13, 2010 | 2/10 | AR 306 |
| October 11, 2010 | 6/10 | AR 268 |
| November 8, 2010 | 4/10 | AR 269 |
| December 6, 2010 | 8/10 | AR 270 |
| January 31, 2011 | 8/10 | AR 311 |
| May 16, 2011 | 8/10 | AR 313 |
| August 5, 2011 | 8/10 | AR 612 |
| September 28, 2011 | 8/10 | AR 611 |
| November 21, 2011 | 8/10 | AR 610 |
| January 13, 2012 | 10/10 | AR 609 |
| April 5, 2012 | 8/10 | AR 608 |

Dr. Carlson's treatment notes are thus entirely consistent with his statement in the RF Capacity Questionnaire. AR 567. That Pruett reported that her pain level was slightly above or slightly below that average on a handful of occasions does not contradict Dr. Carlson's statement in the RF Capacity Questionnaire. The RF Capcity Questionnaire form asked Dr. Carlson for an average of Pruett's level of pain, not the full range of all pain levels reported. *Id*. Six to eight on a ten-point scale is clearly the average pain level reported by Pruett during her office visits with Dr. Carlson. Accordingly, Dr. Carlson's treatment notes provide no basis to cast doubt on his credibility or undermine the validity of his opinions as Pruett's treating physician.

Second, the ALJ noted that the record demonstrates that Pruett suffered only "a slight decrease in sensation over her foot and lower legs." AR 23. The ALJ does not explain how this evidence – even if credited as true – necessarily contradicts Dr. Carlson's opinions as to the severity of the pain experienced by Pruett or her ability to stand, sit, lift objects, or function in a

---

scale for ease of comparison with the RF Capacity Questionnaire.

work environment. AR 23. For this reason alone, the ALJ did not satisfy her obligation to "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e her] interpretation thereof, and making findings." *See Thomas*, 278 F.3d 957. Moreover, even assuming that a conflict existed, the ALJ did not explain why she credited the observation made by a physician during a 2009 emergency room visit over those of Pruett's treating physician, who had seen Pruett on well over a dozen occasions from the beginning of 2010 through mid-2012. AR 571; *see also* 20 C.F.R. § 416.927(c)(2)(i) ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ's failure to justify her rejection of Dr. Carlson's opinions is especially significant in this case, where there is evidence in the record that Pruett's condition worsened after 2009. *See* AR 210 ("My pain has gotten much worse in the last few months."); AR 263-70, 311, 313, 608-12 (treatment notes documenting increase in reported pain level from 2010 to 2012).

Finally, the ALJ noted that Pruett "has not undergone any diagnostic testing of record, including nerve functioning testing." AR 23. Of course, one of the factors for evaluating the weight of medical source testimony is the relevant evidence presented to support the source's opinion. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). However, the fact that a treating physician's opinion is not buttressed by diagnostic testing is not sufficient reason to dismiss the physician's testimony. *See Embrey*, 849 at 421 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity" required to reject a treating physician's testimony). In this case, the ALJ did not explain whether diagnostic testing could have confirmed Dr. Carlson's opinions regarding Pruett's work-related limitations or whether there was a medically appropriate basis to conduct any hypothetical diagnostic testing. AR 23. In short, the ALJ's observation that Pruett did not undergo diagnostic testing is not, standing alone, a specific or legitimate reason to reject the testimony of her treating physician.

11

The Ninth Circuit "[has] made it clear that the medical opinions of a claimant's treating physician[ ] are entitled to special weight and that, if the ALJ chooses to disregard them, [she] must set forth specific, legitimate reasons for doing so, and this decision itself must be based on substantial evidence." *Embrey*, 849 F.2d at 421 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (quotations omitted)). In this case, the Court finds that none of the ALJ's stated reasons for rejecting Dr. Carlson's opinions meet this standard.

**2. The ALJ Improperly Ignored the Opinions of Pruett's Treating Physician**

An ALJ is required to consider all medical opinions in the case record. *See* 20 C.F.R. § 404.1527 ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). An ALJ cannot avoid the obligation to set forth specific, legitimate reasons for rejecting a treating physician's opinions "simply by not mentioning the treating physician's opinion and making findings contrary to it." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n. 10 (9th Cir. 2007).

In this case, the ALJ found that Pruett did not require a cane for ambulation and she had not been prescribed a cane. AR 21-23. To support this finding, the ALJ cited a Comprehensive Orthopedic Evaluation performed on April 14, 2011, where the examiner quotes Pruett as stating that she purchased her cane at a thrift store and that the cane is "not prescription." AR 278-79. However, the ALJ's analysis ignores contradicting evidence in the RF Capacity Questionnaire provided by Dr. Carlson. In that Questionnaire, which is dated March 17, 2012, Dr. Carlson stated that Pruett "falls without a cane" and "walks with a cane," AR 566, and answered affirmatively to the questions "[w]hile engaging in occasional standing/walking, must your patient use a cane or other assistive device?" and "[w]as the patient's acquisition of a cane prescribed by you or another doctor?" AR 570. The ALJ's decision does not mention Dr. Carlson's opinions, so necessarily it did not set out a detailed and thorough summary of the conflicting clinical evidence, state the ALJ's interpretation thereof, and make findings based on substantial evidence. *See Garrison*, 759 F.3d at 1012. Because she simply did not address Dr. Carlson's opinion about Pruett's need for a cane, the ALJ provided no legitimate reason to favor the opinion of the examining physician over

Pruett's treating physician.[3]

The Commissioner's argument to the contrary is unavailing. The Commissioner suggests that the ALJ relied on Pruett's own statements to the examining physician (*e.g.,* that the cane was not prescribed) to cast doubt on Dr. Carlson's statements to the contrary, and that Pruett's challenge in this action ultimately amounts to a simple disagreement over disputed evidence. Dkt. No. 23 at 5. But the record contains no such analysis by the ALJ. The ALJ's decision did not even mention Dr. Carlson's statements concerning Pruett's need for a cane, much less weigh those statements against competing evidence to reach a well-reasoned conclusion. *See* AR 23. The Commissioner cannot perform that analysis for the ALJ now. *See Stout*, 454 F.3d at 1054. Accordingly, the ALJ erred when she ignored Dr. Carlson's opinion that Pruett needed and had been prescribed a cane.

## IV. RELIEF

"[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981)). "The Social Security Act, however, makes clear that courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with* or *without* remanding the cause for a rehearing." *Id*. (citing 42 U.S.C. § 405(g)) (emphasis added). In the Ninth Circuit, a district court may remand directly for an award of benefits only if three conditions are met: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. at 1020; *see also Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). It is the

---

[3] The Court notes that Pruett's April 2011 statement that she walks with a cane but that the cane was not prescribed, AR 278-79, is not necessarily inconsistent with Dr. Carlson's March 2012 RF Capacity Questionnaire stating that Pruett's cane was prescribed, AR 570. There does not appear to be evidence in the record that excludes the possibility that Pruett began using a cane on her own volition prior to April 2011, and then was prescribed the cane by Dr. Carlson after that date in light of her worsening condition.

13

"unusual case" that meets this standard. *See Benecke*, 379 F.3d at 595. Generally, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id*. (citations omitted). Here, the Court finds that this extraordinary remedy is warranted.

First, while remanding for further proceedings could be considered "useful" insofar as it would allow the ALJ to revisit the opinions she rejected for legally insufficient reasons, remand "for the purpose of allowing the ALJ to have a mulligan [does not qualify as a] 'useful purpose' under the first part of credit-as-true analysis." *Garrison*, 759 F.3d at 1021; *see also See Benecke,* 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart,* 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") (citation omitted). Here, the ALJ dismissed and ignored the testimony of Dr. Carlson without providing legitimate reasons supported by substantial evidence. The Court need not remand in order to afford the ALJ a second bite at the apple.[4]

Second, as explained at length above, the ALJ failed to provide legally sufficient reasons to reject the opinions of Dr. Carlson, both as to the severity of Pruett's impairments and her need for a cane. The second prong of the credit-as-true rule is met.

Third, if the improperly discredited evidence were credited as true, it is clear that the ALJ would be required to find Pruett disabled on remand. This conclusion is supported both by the significance of the improperly discredited evidence and the testimony of the vocational expert questioned by the ALJ. Dr. Carlson explained that Pruett needs a cane to walk, that she falls without a cane, and that her cane was prescribed. AR 566, 570. He opined that, at 419 pounds, Pruett can stand no more than ten consecutive minutes at any one time, and that Pruett must lie

---

[4] In contrast, this Court would have remanded for further proceedings had the ALJ's failure to question the vocational expert on the conflict between her testimony and the DOT been the only error in the record. *See Massachi*, 486 F.3d at 1154 (remanding to the ALJ to conduct the appropriate analysis under SSR 00-4p).

14

1  down for one hour of rest after every ten minutes of work.  AR 569.  Dr. Carlson further opined

2  that Pruett can never lift and carry items weighing even less than ten pounds in a competitive work

3  situation and that she can never twist, stoop, crouch, or climb ladders or stairs.  AR 570.  Finally,

4  Dr. Carlson stated that Pruett was "incapable of even 'low stress' jobs" and that her symptoms

5  would "frequently" interfere with the "attention and concentration needed to perform even simple

6  work tasks."  AR 568.  It is simply outside of the realm of possibility that an individual with these

7  limitations could find gainful employment in the national economy.  The Commissioner's

8  submission to this Court does not suggest otherwise.  *See* Dkt. No. 23.

9        This common-sense conclusion is confirmed by the testimony of the vocational expert.

10  The vocational expert testified that an individual with Pruett's RF Capacity (as adopted by the

11  ALJ) would not be able to work as a hand packer or a small products assembler if the individual

12  also needed "to use a cane for long distance ambulation and to walk on uneven terrain."  AR 60.

13  The vocational expert further testified that an individual with those limitations would not be able

14  to perform any jobs that exist in the regional or national economies.  *Id*.  Accordingly, were Dr.

15  Carlson's improperly discounted and ignored opinions credited as true, the ALJ would be required

16  to find Pruett disabled on remand.  Accordingly, this case satisfies the requirements of the credit-

17  as-true standard.

18        Having concluded that this case may be remanded for the payment of benefits, this Court

19  now turns to the question whether it should nonetheless exercise "flexibility" and remand for

20  further proceedings.  *See Garrison*, 759 F.3d at 1021 (holding that courts should exercise

21  "flexibility" to remand cases that meet all three prongs of the credit-as-true rule where "an

22  evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").

23  Flexibility is not warranted here.  The Commissioner's submission to this Court does not identify

24  any fact in the record that casts doubt on whether Pruett is disabled, nor does the Commissioner

25  suggest that the ALJ overlooked a relevant fact supporting that contention.  Accordingly,

26  considering the Commissioner's arguments and independently reviewing the record, this Court

27  sees no basis to seriously doubt that Pruett is disabled.

28        In sum, this Court concludes that Pruett satisfies all three conditions of the credit-as-true

rule and that a careful review of the record discloses no reason to seriously doubt that she is, in fact, disabled. A remand for a calculation and award of benefits is therefore warranted.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment. This case is hereby **REMANDED** for an award of benefits.

**IT IS SO ORDERED**.

Dated: March 31, 2015

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge